Daniel TORRES, Petitioner–Appellant,

v.

J. BERBARY, Superintendent,
Respondent–Appellee.

Docket No. 02–2463.

United States Court of Appeals,
Second Circuit.

Argued: April 30, 2003.

Decided: Aug. 7, 2003.

David E. Liebman, New York, NY, for Petitioner–Appellant.

Nisha M. Desai, Assistant District Attorney for Bronx County, Bronx, NY, (Joseph N. Ferdenzi, Assistant District Attorney, Robert T. Johnson, District Attorney for Bronx County, Bronx, NY, on the brief), for Respondent–Appellee.

Before: MINER, McLAUGHLIN and POOLER, Circuit Judges.

MINER, Circuit Judge.

Petitioner Daniel Torres appeals from a judgment denying a writ of habeas corpus entered in the United States District Court for the Southern District of New York (Martin, *J.*). Torres filed his petition for the writ pursuant to 28 U.S.C. § 2254 as a person in state custody. By the petition, Torres challenged his resentencing by a state court following an alleged breach of the condition of his original sentence. The District Court determined that the resentencing was justified by a satisfactory evidentiary showing of the breach in state court and concluded that the decision of the trial court was not contrary to the jurisprudence of the Supreme Court of the United States. *See Torres v. Berbary,* No. 01 CIV 4512, 2002 WL 1218276 (S.D.N.Y. June 4, 2002). Because we conclude that the hearing afforded by the state court that resulted in the resentencing was inconsistent with due process, we vacate the judgment of the District Court and remand with directions to grant the writ conditionally.

## BACKGROUND

On March 16, 1998, Torres entered a plea of guilty in New York Supreme Court, Bronx County, to the offense of Criminal Sale of a Controlled Substance in the Third Degree, N.Y. Penal Law § 220.39(1), a Class B Felony. The court accepted the plea following the customary allocution and proceeded to impose sentence in accordance with a plea bargain previously arrived at. The sentence provided for a conditional release to Phoenix House, a drug treatment facility and was encompassed in its entirety in the following dialogue between the court and Torres, designated "THE DEFENDANT" in the transcript:

THE COURT: Okay. I am going to sentence you. I will release you on the 23rd to Phoenix House. If you work out, you will be allowed to come back, re-plead to a misdemeanor, and I will sentence you [to] time served. If you don't work out, you will get at least four

and a half to nine years in jail. Do you understand?

THE DEFENDANT: Yes.

THE COURT: Is that satisfactory to you?

THE DEFENDANT: Yes.

"If you work out" apparently was understood by all concerned to refer to the successful completion by Torres of the drug treatment program provided by Phoenix House. According to the sentence, successful completion would result in a return to court for repleading to a misdemeanor in place of the felony, and a resentencing to time served. Failure to complete would result in a sentence of imprisonment of four-and-a-half-to-nine years on the original felony charge.

Torres immediately entered the Phoenix House program. Less than a month later, Torres was discharged from the program. The "Client Discharge Form" dated April 10, 1998, provided to Torres by Phoenix House, gave the following reasons for his discharge: "Your alledge [sic] involvement in the distribution of contraband in the facility. You are being directed to immediately surrender yourself to 1020 Grand Concourse Part 51 Bronx Supreme Court." The Form contained the following legend: "You have the right to have this decision reviewed by the Program Director. You may seek advice from outside sources in preparation for the program director/designee review of the discharge decision." Although Torres inserted a checkmark in the space provided in the Form following the words: "I wish a review" and signed the Form, no review was provided to him.

By letter dated the same date as the Discharge Form, Ed Greaux of Phoenix House advised the Bronx Supreme Court of Torres' discharge. The letter, in its substantive entirety, reads as follows:

Your Honor, with reference to the above-named client, information has come to light that compels us to discharge this resident. New resi[d]ents overheard conversations conducted in [S]panish between this client and other residents claiming that they could make illicit drugs available for sale within this facility.

It is suspected that the drugs may have been entering the facility through the use of church trips. Confederates may have met clients at church to pass drugs or money. Also, it is suspected that gang activity in the form of meetings on the male floor and the use of gang hand signals have involved the above-named client.

Although we have been unable to obtain physical evidence, we have received information from residents that clearly implicates this individual in an organized attempt to sell drugs in this facility.

Following his discharge, Torres was returned to the court for further proceedings. At the outset of the proceedings, counsel for Torres addressed the court as follows:

[COUNSEL]: Judge, for the record, my client is, again, he had pled guilty and was given his plea wherein if he completed the Phoenix Drug House program, to which he was assigned, he would be allowed to complete that program and that if he completed it successfully, he would be allowed to withdraw his felony plea and receive a plea with a misdemeanor and time served.

I realize there has been a communication to the Court. I've seen a copy of it indicating that my client was discharged from Phoenix House and making an accusation that he was involved with other people in trying to bring drugs into the facility. My client denies that. He's asked me to state that he never was a participant with anyone else in trying to bring drugs into the facilities, and he

66

has tested clear all times and he would like an opportunity to complete a drug program and complete all the conditions of the plea.

The court responded as follows:

THE COURT: The application is denied. The report has convinced me that he violated the conditions I set down, very seriously. You have an exception for the record.

Later, there was this exchange between counsel and the court:

[COUNSEL]: Judge, the Defendant is again giving me [a] copy of the notification, that he received a client discharge form from Phoenix House, and that he says he requested a review which he was never given.

THE COURT: I'm still prepared to sentence him. Phoenix House has indicated they don't want him. Let's proceed, please.

After a further exchange during the proceedings, counsel again advised the court of Torres' adamant assertion that he did not bring drugs into Phoenix House, and of Torres' request that he have "some sort of hearing, evidentiary hearing on this issue." The court responded to that request as follows:

THE COURT: I decline to do so. I received a communication, as you know, you were given it as soon as I received it, indicating that Phoenix House had had people overhear him plotting with other people to bring drugs into the facility. I'm not going to try that case because Phoenix House, in my opinion, generally gives me accurate reports, and most of the time, they want to keep a client, not let a client go. I'm prepared to sentence your client. I deny any further applications to be given.

Torres then personally requested the opportunity to speak, which the court grant-ed. The following is a transcript of Torres' unsworn statement to the court:

THE DEFENDANT: Yeah. When I went, a lot of people, which is usually people that I know was upstate with me before, one of them, which I don't know, who supposedly got caught with drugs or gave drugs to somebody, now, it's the people I talk to almost every day when I have a cigarette break. When that happened, they took my unit twice and searched me and saying, that's my people, that I screw around, but I say that I don't know what happened. They still threw me out due to the fact that I associate with them, that I say what's up to them, and I say hello to them, when we used to go down for a cigarette smoke. In other words, they also told me, I will have a review with the director, but they are stating that they just threw me out for associating with them. It was really, I don't know who or what really happened.

The court immediately proceeded with sentencing after Torres' statement as follows:

THE COURT: Okay. Based upon everything I know about the case, based upon the recent communication and writing that I received from Phoenix House, Defendant is sentenced to a minimum term, which I promised him if he did not successfully complete the program, four and a half to nine years, and I am imposing the statutory surcharge.

On appeal to the Appellate Division, First Department, Torres' judgment of conviction and sentence was affirmed. The Appellate Division reasoned as follows:

The court promised that it would impose a more lenient disposition in the event that [Torres] successfully completed a drug program. [Torres] was expelled from the drug program. Before impos-

ing sentence, the court conducted an inquiry to determine whether or not there was any legitimate basis for defendant's exclusion from the drug program, and satisfied itself that the report of [Torres'] misconduct in the program was reliable and accurate. Hence, the court properly sentenced [Torres] on the felony.

*People v. Torres*, 277 A.D.2d 12, 12, 715 N.Y.S.2d 59 (1st Dep't 2000) (mem.) (citations omitted). Leave to appeal to the New York Court of Appeals was denied. *See People v. Torres*, 96 N.Y.2d 764, 725 N.Y.S.2d 290, 748 N.E.2d 1086 (2001).

In his petition for a writ of habeas corpus dated May 29, 2001, Torres alleged that his due process rights were violated because he was denied an evidentiary hearing in connection with his discharge from Phoenix House. He asserted that he was "ejected from the treatment program on the basis of uncorroborated and unsubstantiated double-hearsay allegations from unnamed sources" and that "[t]he ejection was conducted without an internal review hearing and in violation of the treatment program's internal policies." His due process challenge was grounded in his claim that "[n]o evidentiary hearing of any kind was conducted by the sentencing court to evaluate the allegation, even though I requested and was not given a hearing at the treatment center, and I was not permitted to challenge the evidence or cross-examine any witness."

In an unpublished, eleven-page opinion and order dated May 31, 2002, the District Court denied Torres' petition for relief under the provisions of 28 U.S.C. § 2254. The District Court concluded that the state court's decision was "not contrary to 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Torres*, 2002 WL 1218276, at *4.

In support of that conclusion, the District Court reasoned as follows:

> [T]he sentencing judge had a report from a reliable institution to which the courts regularly send defendants for treatment, that Petitioner had been involved in bringing drugs into the institution. While the institution's conclusion was based on information from unnamed, recently admitted residents, there was no reason to believe that the institution did not have an adequate basis to believe their statements. Had the court ordered a hearing, the institution would no doubt have resisted disclosing the identities of those who provided information in confidence. Thus, it is likely that the record at the close of the hearing would have been no different than it was at the time of sentencing, with the petitioner denying the charge, and Phoenix House staff persuaded that the charges were true and stating that they would not re-admit the Petitioner.

*Id.* A certificate of appealability was issued by the District Court, and Torres filed a timely notice of appeal.

## DISCUSSION

I. *Standards for Habeas Corpus Review of State Convictions: The Statutory Scheme Examined.*

█ We review *de novo* a district court's denial of a writ of habeas corpus to a person in custody pursuant to a state court judgment. *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir.2001). The standard for review by a district court in the first instance has been established by an Act of Congress, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as codified in 28 U.S.C. § 2254(d). The statute provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State

court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

█ The deferential review of state court judgments established by the statutory scheme is dependent on the federal claim having been "adjudicated on the merits" by the state court. If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review *de novo* the state court disposition of the petitioner's federal constitutional claims." *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir.2001). A petitioner's federal constitutional claim is adjudicated on the merits in state court when the state court disposes of the claim on the merits and reduces its disposition to judgment. *See Norde v. Keane*, 294 F.3d 401, 410 (2d Cir.2002). The issue of whether the claim has been disposed of on the merits by a state court includes an inquiry into: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir.2001) (internal quotation marks omitted).

## II. *The Appropriate Standard of Review in this Case: The Unreasonable Application Rule Described.*

There is no question that the issue before us was "adjudicated on the merits" in the state courts. The Appellate Division concluded that the inquiry conducted by the state trial court revealed an adequate basis for the expulsion of Torres from the drug program, specifically determining that the trial court had properly satisfied itself that the report of Torres' conduct at Phoenix House "was reliable and accurate." *Torres*, 277 A.D.2d at 12, 715 N.Y.S.2d 59. The Appellate Division effectively decided that there was no violation of Torres' right to constitutional due process and sentencing when it held that the trial court "properly sentenced [Torres] on the felony." *Id.* Accordingly, we are constrained to conduct our review under the deferential standard established by the AEDPA.

█ With respect to the elements of AEDPA deferential review set forth in § 2254(d)(1), a state court's decision is "contrary to" clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Eze v. Senkowski*, 321 F.3d 110, 123 (2d Cir.2003). And an "unreasonable application" of "clearly established" Supreme Court precedent occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. "Although it is clear that the question is

'whether the state court's application of clearly established federal law was objectively unreasonable,' the precise method for distinguishing 'objectively unreasonable' decisions from merely erroneous ones is less clear." *Cotto v. Herbert,* 331 F.3d 217, 248 (2d Cir.2003) (citation omitted). "However, it is well-established in [this C]ircuit that the 'objectively unreasonable' standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Id.* (internal quotation marks omitted).

### III. *Due Process in the Sentencing Context: Supreme Court Precedent Identified.*

■ The Supreme Court has clearly spoken on the question of the standard of proof of facts in sentencing in relation to the constitutional requirement of due process, holding that the preponderance of evidence standard satisfies the requirement. *See McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) ("Like the [state] court below, we have little difficulty concluding that in this case the preponderance standard satisfies due process."); *see also United States v. Watts,* 519 U.S. 148, 156, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (noting, in connection with the approval of standard under Federal Sentencing Guidelines, that the Court has "held that application of the preponderance standard at sentencing generally satisfies due process").

■ The Supreme Court also has clearly spoken on the question of the process due one who is alleged to have "fail[ed] to abide by the rules" governing his parole. *See Morrissey v. Brewer,* 408 U.S. 471, 479, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The determination to resentence for the breach of a condition of a sentence is analogous to the determination to revoke the

parole of a parolee for failure to comply with the conditions of parole. It is also analogous to the determination to impose a sentence for violation of the terms of probation. All these determinations should be informed by the same considerations. For parole revocation, an opportunity for a hearing must be provided. According to the Supreme Court,

[t]his hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.

*Id.* at 488, 92 S.Ct. 2593.

In order to justify the further punishment generated by parole revocation, the following "minimum requirements of due process" must be filled:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489, 92 S.Ct. 2593. The inquiry is said to be a "narrow" one, and "the process should be flexible enough to consider evidence, including letters, affidavits, and

other material that would not be admissible in an adversary criminal trial." *Id.*

We have previously reviewed Supreme Court teaching to arrive at the conclusion that, although due process considerations are implicated in sentencing generally, not all the evidentiary limitations and procedural safeguards are required in the conduct of a sentencing proceeding. *See United States v. Fatico,* 579 F.2d 707, 711 (2d Cir.1978). We have gone so far as to hold "that Due Process does not prevent use in sentencing of out-of-court declarations by an unidentified informant where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." *Id.* at 713 (footnote omitted).

## IV. *Torres' Second Sentence: The Process Analyzed and Evaluated.*

Torres actually was sentenced a second time under the peculiar procedure followed by the state trial court. Originally, his plea to a felony drug count was accepted by the court, and he was remanded to a drug rehabilitation program. Successful completion of the program, he was told, would result in his return to the court for a plea to a misdemeanor, apparently in replacement of the felony conviction, and a sentence to "time served" in the rehabilitation program. When Torres was returned to the trial court for further proceedings, however, it was not for a misdemeanor plea, but for a sentence of four-and-a-half-to-nine years. The felony sentence imposed was the sentenced promised if Torres did not "work out" in the Phoenix House program. In imposing the sentence, the trial court relied only on its review of the letter from Phoenix House, and, after he had requested and received permission to be heard, on Torres' brief unsworn statement to the court that he was innocent of the alleged wrongdoing.

Due process standards clearly established by the Supreme Court were thereby ignored.

In rejecting Torres' unsworn statement and relying on the report from Phoenix House, the trial court noted that it was convinced by the report that Torres had "violated the conditions" the court had set down "very seriously." An examination of the report that formed the entire basis for the court's determination reveals that double and triple hearsay informed the decision of Phoenix House to discharge Torres from the program for attempting to sell drugs at the facility. According to the report, certain residents of the facility overheard conversations in Spanish between Torres and others "*claiming* that they *could* make illicit drugs available for sale" within the facility. (emphasis supplied) The report recites that "[i]t is *suspected* that drugs *may* have been entering the facility through the use of church trips," and that "[c]onfederates *may* have met clients at church to pass drugs or money." (emphasis supplied) These speculative statements obviously do not implicate Torres in any way.

There is one statement in the report that does implicate Torres: "[I]t is *suspected* that gang activity in the form of meetings on the male floor and the use of gang hand signals have involved [Torres]." (emphasis supplied) This statement does not even implicate Torres directly in drug dealing at the facility. It is only the concluding sentence of the Report that mentions Torres in connection with drug dealing at the facility. According to the concluding sentence, information received from (unnamed) residents "clearly implicates" Torres "in an organized attempt to sell drugs in this facility." That statement is qualified by the statement: "[W]e have been unable to obtain physical evidence."

In affirming Torres' felony sentence, the Appellate Division recognized the due process implications of the procedure in the trial court, finding that the trial court properly relied on a report of misconduct that was "reliable and accurate." 277 A.D.2d at 12, 715 N.Y.S.2d 59. The Appellate Division therefore recognized the Supreme Court's due process jurisprudence relating to sentencing but applied it to the facts of this case in an objectively unreasonable manner. *See Wiggins v. Smith,* —— U.S. ——, 123 S.Ct. 2527, 2538–39, 156 L.Ed.2d 471 (2003); *see also Woodford v. Visciotti,* 537 U.S. 19, 24–25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

In the first place, it cannot be said that the required preponderance of the evidence standard in sentencing can be met with only a report of the type furnished by Phoenix House. As has been demonstrated, due process in sentencing requires at least a showing by a preponderance of evidence to resolve disputed factual issues. While it is true, as the learned district judge noted, that *Morrissey v. Brewer* permitted the use of "material that would not be admissible in an adversary criminal trial," 408 U.S. at 489, 92 S.Ct. 2593, a single report replete with multiple levels of hearsay and speculation cannot be said to suffice to make a showing by a preponderance of the evidence, even under the "flexible" standard that is permitted. And, while *Morrissey* involves standards for parole revocation, it is not a great extension to apply its principles to the breach-of-condition-of-sentence case before us. *See Kennaugh v. Miller,* 289 F.3d 36, 44–45 (2d Cir.), *cert. denied,* 537 U.S. 909, 123 S.Ct. 251, 154 L.Ed.2d 187 (2002).

Due process has clearly been held to require "some kind of hearing" before a person is deprived of a liberty interest. *See Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (In the context of deprivation of good time prison credits for serious misconduct, "the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed."). The teachings of the Supreme Court have been effectively ignored in the case of Torres. He was not afforded the opportunity to testify under oath, and no witness from Phoenix House testified as to the reliability of those who furnished the information of Torres' wrongdoing. The district judge opined that the institution "no doubt" would have resisted disclosure of the names of those who furnished the information. We cannot say that this is so, and we certainly cannot say that a witness familiar with the administration of Phoenix House could not or would not have furnished some basis for determination of the informants' reliability. A Phoenix House representative could have testified in this regard.

The District Court also opined that "there was no reason to believe" that Phoenix House did "not have an adequate basis to believe" the informants' statements. The problem with that analysis is that there was no explanation of the basis for the beliefs of Phoenix House other than vague references to information furnished by informants. Had the informants furnished reliable information in the past? Did they have any axes to grind? Were they promised any rewards for informing? Torres said he was discharged from the program merely for associating with certain other inmates during "cigarette breaks." His "hearing" did not even include his own sworn testimony in the trial court and he therefore was not available for cross examination regarding his contentions. As a matter of fact, he was not even given a review by Phoenix House prior to his discharge despite the fact that he requested a review by the Program

Director by checking the space provided for such a request on his Client Discharge Form.

While it is true that the Supreme Court in *Williams v. New York*, 337 U.S. 241, 252 n. 18, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), "held that it was not a denial of due process in sentencing to rely on information supplied by witnesses whom the accused could neither confront nor cross-examine," *Fatico*, 579 F.2d at 711, it is also true that "*Williams* does not hold that all hearsay information must be considered," *id.* at 712. In the federal sentencing context, we have held "that admission of an unidentified informant's *corroborated* declarations in a sentencing proceeding where there is *good cause* for *not disclosing* his identity is not barred by the Confrontation Clause." *Id.* at 714 (emphasis supplied). In the case at bar, there was no corroboration of informant declarations and no showing of good cause for failure to disclose the identity of any informant who may have furnished information to Phoenix House regarding Torres.

We think that well-settled and clearly established Supreme Court due process jurisprudence or, at the very least, a reasonable extension of it, mandates a finding of denial of due process in Torres' sentencing. The following elements, unique to this case, compel the issuance of a writ of habeas corpus: total reliance by the trial court on a hearsay report that itself contains only uncorroborated statements of unnamed informants; omission of any finding by the trial court as to the reliability of the informants or as to reasons for the non-disclosure of their identities; failure of the trial court to conduct some kind of hearing, including provision for the examination of Torres under oath; lack of preponderating evidence of Torres' wrongdoing; and the gross disparity between a sentence that would release Torres to soci-

ety on a plea to a misdemeanor charge after completion of the Phoenix House program and the four-and-a-half-to-nine-year felony sentence to state prison that he received for violating the original sentence condition.

## CONCLUSION

We direct that a writ of habeas corpus be issued releasing Torres from his present confinement unless the State provides him with a new sentencing hearing within ninety days.