Omar **COLEMAN (96–R–8723), Petitioner,**

v.

**Thomas RICK, Superintendent of Upstate Correctional Facility, Respondent.**

No. 01–CV–2329 (JBW).
03–MISC–0066 (JBW).

United States District Court,
E.D. New York.

Aug. 21, 2003.

Diane R. Eisner, Kings County District Attorney, Brooklyn, NY, for Respondent.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims. As noted below, the case raises a serious problem about what some might see as attempts by the Court of Appeals for the Second Cir-

cuit to impose federal standards on state sentencing procedures.

## I. Facts and Procedural History

Petitioner was arrested after allegedly firing several bullets at a man with whom he was arguing. None struck. Petitioner was charged with second degree attempted murder, assault and reckless endangerment.

Seventeen years old at the time and apparently learning disabled, petitioner through counsel offered to plead guilty to one count of attempted assault in the first degree in full satisfaction of the indictment. In return for the plea, petitioner was offered a "one-day split sentence," pursuant to which he would serve a single day in prison and five years probation, with mandatory participation in the "CASES" program (Center for Alternative Sentencing and Employment Services).

At the plea hearing petitioner indicated that he understood the nature of the proceeding, that his plea was voluntary, knowing and intelligent, and that he had in fact committed the crime to which he was pleading guilty. The court promised to sentence petitioner in accordance with the agreement reached between petitioner and the prosecution, but warned petitioner of the following:

> I tell you if you fail to appear for sentence, or if you do not cooperate with the Probation Department, or get into trouble between now and the date of sentence, or do not complete the CASES program, I will not keep my promise and not allow you to withdraw the plea and I will sentence you according to my conscience. Do you understand that?

Plea Minutes at 13–14. Petitioner acknowledged that he understood the conditions.

Two days after this hearing, petitioner was arrested and charged with fourth degree criminal possession of a weapon and second degree menacing. Twenty days after that, petitioner was arrested again, this time for first degree robbery second degree menacing, and second degree harassment. About a week later, petitioner was indicted by a grand jury for first degree robbery and other counts pertaining to the latter incident.

When petitioner appeared for sentencing on the case that is the subject of this habeas proceeding, the sentencing court learned that petitioner had been arrested and been terminated from the CASE program. Defense counsel asked to adjourn the sentencing so that he could learn more about petitioner's arrest, but the court rejected the request. Instead the court opened a hearing—pursuant to *People v. Outley*, 80 N.Y.2d 702, 594 N.Y.S.2d 683, 610 N.E.2d 356 (1993)—to give petitioner an opportunity to controvert the legitimate basis for the new arrest. Petitioner, apparently unsworn, protested his innocence of the robbery.

The court, concluding that there was a legitimate basis for the arrest and for petitioner's termination from the CASE program, sentenced him to 3–1/2 to 7 years in prison.

Petitioner's conviction and sentence were affirmed by the Appellate Division. Leave to appeal to the New York Court of Appeals was denied. No state collateral proceedings were initiated.

In his application for a writ of habeas corpus, petitioner claims that (1) his guilty plea was "unlawfully induced or not made voluntarily with understanding of the nature of the charge and consequences of the plea"; (2) he was denied the effective assistance of counsel because counsel allowed him to plead guilty even though petitioner's mental functioning is on a "remedial basis"; and (3) the sentencing court's sentencing of petitioner without the benefit of sufficient facts concerning his arrest and

termination from the CASES program denied him due process of law.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

 An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly estab-

lished federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

 "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002); *see also Yung v. Walker,* 341 F.3d 104 (2d Cir.2003) (amended opinion) (district court's habeas decision that relied on precedent from the court of appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary,* 340 F.3d 63, 72 (2d Cir.2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This

exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 WL 12142, *3, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir.1996). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir. 2000). Where "a state court's ruling does not make clear whether a claim was rejected for procedural or substantive reasons and where the record does not otherwise preclude the possibility that the claim was denied on procedural grounds, AEDPA deference is not given, because we cannot say that the state court's decision was on the merits." *Su v. Filion*, 335 F.3d 119, 126 n. 3 (2d Cir.2003) (citing *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.2003)). This congeries of holdings leaves it an open question whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.*

## V. Ineffective Assistance of Counsel

■ The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to

have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also Wiggins v. Smith*, 539 U.S. ——, 123 S.Ct. 2527, 156 L.Ed.2d 471, slip op. at 8–10 (2003); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

 The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d

191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes*, 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir.2003).

 As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins*, 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt*, 239 F.3d at 201 (same). The court of appeals for the

Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze,* 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for ... counsel's decisions").

 There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

## VI. Certificate of Appealability

 A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. **Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit.** *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The court has taken into account the rule of section 2253(c)(3) of Title 28 of the United States Code that a certificate of appealability "shall indicate which specific issue or issues satisfy the [substantial showing of the denial of a constitutional right] required by paragraph (2)." *See also Shabazz v. Artuz,* 336 F.3d 154, 160 (2d Cir. 2003).

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

## VII. Analysis of Claims

 Petitioner first claims his guilty plea was "unlawfully induced or not made voluntarily with understanding of the nature of the charge and consequences of the plea." In support of the claim, petitioner asserts that the sentencing court should have done more to ascertain whether petitioner's status as a special education student reflected such diminished mental capacity as to make his plea unknowing and involuntary. This claim was not presented to the state court on direct appeal and is thus unexhausted. It would be futile for petitioner to now try to raise it because its factual basis was apparent from the record and relief pursuant to section 440 of the New York Criminal Procedure Law is thus foreclosed. The claim must be treated in this court as procedurally barred. *See Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994) (if a state prisoner has not exhausted his state remedies with respect to a claim, but no longer has a state forum in which to raise the claim, the claim is procedurally barred).

At any rate, the claim is meritless. To be constitutionally valid, a plea must be entered into knowingly and voluntarily, with an understanding of its consequences:

> It is beyond dispute that a guilty plea must be both knowing and voluntary. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination.

*Parke v. Raley,* 506 U.S. 20, 28–29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (quotations and citations omitted). The sentencing court went to great lengths to establish during the plea colloquy that petitioner

understood the nature of the proceeding and the rights he was waiving by pleading guilty instead of going to trial. Petitioner's answers to all of the court's questions were appropriate and evinced his understanding of the purpose of the hearing. Petitioner swore that he was not coerced in any manner to plead guilty, and he swore that he committed the crime to which he was pleading. Petitioner has provided no evidence that he was not competent to plead; evidence of his learning disability does not suffice. Habeas corpus relief on this ground is not warranted.

 Petitioner next claims that he was denied the effective assistance of counsel because counsel allowed him to plead guilty even though petitioner's mental functioning is on a "remedial basis." This claim is also unexhausted, though it not necessarily procedurally barred because it might plausibly be entertained in a state collateral motion. It is unnecessary to stay the instant proceedings, however, because the claim is without merit. Because petitioner has not demonstrated that he was not competent to plead guilty, and because counsel had no reason to believe petitioner incompetent, counsel's representation in this regard was not ineffective. To the contrary, counsel's recommendation that petitioner accept this extraordinarily generous plea offer was sound advice. Habeas relief on this claim is not warranted.

 Finally, petitioner claims that the sentencing court's sentencing of petitioner without the benefit of sufficient facts concerning his arrest and termination from the CASES program denied him due process of law. This claim is exhausted. It was addressed and denied on the merits by the Appellate Division, which stated the following:

> As a condition of his plea agreement, the defendant was warned to stay out of trouble pending sentence or the court would impose an enhanced sentence. At sentencing, the court was informed that the defendant had been rearrested and indicted on, *inter alia*, robbery charges. We reject the defendant's contention that the court impermissibly enhanced his sentence. Since the defendant had been indicted, the court was assured that there was a legitimate basis for the new charges. Thus, the court properly exercised its discretion in imposing an enhanced sentence (*see, People v. Outley,* 80 N.Y.2d 702, 594 N.Y.S.2d 683, 610 N.E.2d 356; *People v. Maietta,* 80 N.Y.2d 702, 594 N.Y.S.2d 683, 610 N.E.2d 356; *People v. Ruffin,* 208 A.D.2d 657, 617 N.Y.S.2d 333).

*People v. Coleman,* 266 A.D.2d 227, 697 N.Y.S.2d 683, 683 (App.Div.1999).

The New York Court of Appeals case relied upon by both the sentencing court and the Appellate Division, *People v. Outley,* acknowledges that to comply with the constitutional guarantee of due process, a sentencing court "must assure itself that the information upon which it bases the sentence is reliable and accurate." 594 N.Y.S.2d 683, 610 N.E.2d at 360 (citing *Mempa v. Rhay,* 389 U.S. 128, 133, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), and *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). In *Outley,* where the defendants all breached a no-arrest condition by being arrested before sentencing and all denied complicity in the underlying crime, the New York Court of Appeals held that "proof that defendant actually committed the postplea offense which led to the arrest was not necessary," but then asked "what lesser showing ... due process require[s] in order for the court to impose the enhanced sentence?" *Id.* at 361. The court answered this question by holding that a sentencing court "must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without founda-

tion," with the inquiry to "be of sufficient depth ... so that the court can be satisfied—not of defendant's guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge." *Id.*

Given the freedom with which state courts are allowed to proceed in sentencing matters—and measured against the standards set forth by the New York Court of Appeals in its cogent due process analysis in *Outley*—the sentencing court's actions in the instant case do not violate the federal constitution. The court's determination, after a brief hearing at which petitioner was given the opportunity to speak, that there was a legitimate basis for petitioner's arrest is, under the circumstances of this case, sufficient to accord with due process.

This conclusion may be thrown into some doubt by a recent decision of the Court of Appeals for the Second Circuit, *Torres v. Berbary,* 340 F.3d 63 (2d Cir. 2003). In *Torres,* the court ordered the district court to conditionally grant a writ of habeas corpus to a state prisoner who, like petitioner in the instant matter, failed to meet a condition for lenient sentencing imposed by the state sentencing court. Defendant Torres was promised a sentence of "time served" in a drug rehabilitation program if he successfully completed the program; if he did not complete the program, he would be sentenced to 4–1/2 to 9 years in prison. *Id.* at 69–70. He was dismissed from the rehabilitation program after allegations of his continued drug dealing were reported to program directors. The sentencing court, relying on a report from the program directors, was convinced that Torres had violated the sentencing conditions and imposed the promised prison sentence.

Torres's conviction was affirmed by the Appellate Division, which observed that "[b]efore imposing sentence, the court con-

ducted an inquiry to determine whether or not there was any legitimate basis for defendant's exclusion from the drug program, and satisfied itself that the report of defendant's misconduct in the program was reliable and accurate." *People v. Torres,* 277 A.D.2d 12, 715 N.Y.S.2d 59, 59 (App.Div.2000). In support of its conclusion, the Appellate Division cited *People v. Outley,* discussed above.

Seeking a writ of habeas corpus pursuant to section 2254 of Title 28 of the United States Code, Torres urged that his due process rights were violated because the sentencing court, in reaching its sentencing decision, had relied upon hearsay evidence in making its determination. The argument was rejected by the district court, which concluded that there was no reason to believe the drug program did not have an adequate basis to believe the statements. The district court also concluded that the Appellate Division's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

The Court of Appeals for the Second Circuit reversed the district court's decision denying the writ. It began by noting—obviously correctly—that the Supreme Court had clearly established that a "preponderance of the evidence" standard satisfies the constitutional requirement of due process. *Id.* at 68–69 (citing *McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), and *United States v. Watts,* 519 U.S. 148, 156, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997)). The *Torres* court then suggested that resentencing for the breach of a condition of a sentence is analogous to the revocation of parole, for which "minimum requirements of due process must be followed." *Id.* at 69 (quoting *Morrisey v. Brewer,* 408 U.S. 471, 488, 92 S.Ct. 2593, 33 L.Ed.2d 484

(1972)). The analogy is somewhat strained but defensible.

Odd, however, is the logical leap the Court of Appeals for the Second Circuit then makes. Without support from Supreme Court cases, it states that the Due Process Clause requires *at least* application of a preponderance standard for determination of sentencing facts: "As has been demonstrated, due process in sentencing requires at least a showing by a preponderance of evidence to resolve disputed factual issues." *Id.* at 70–71. This conclusion is unfounded in the logic of the court's opinion, which takes a "sufficient" condition (the preponderance standard satisfies due process) and treats it as a "necessary" condition (due process requires at least a preponderance standard). The court's conclusion is also unsupported by Supreme Court precedent. To the contrary, the Supreme Court in *McMillan* observed that "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." *McMillan,* 477 U.S. at 91, 106 S.Ct. 2411; *see also id.* at 92 n. 8, 106 S.Ct. 2411. In fact, the Supreme Court specifically found no "warrant [for] constitutionalizing burdens of proof at sentencing" in that case. *Id.* To this court's knowledge, the Supreme Court has never done so.

Respectfully, it may be suggested that the *Torres* court was imposing upon state criminal courts its authority to control sentencing in federal criminal cases. The burden of proof requirements for federal sentencing are apparently sought to be imposed on the states. *See Torres,* 340 F.3d at 68–69 (citing *Watts,* 519 U.S. at 156, 117 S.Ct. 633, a federal case establishing that a preponderance standard is appropriate for factual determination made pursuant to the federal Sentencing Guidelines). Comity principles and the AEDPA statute suggest that this course is undesir-

able and indefensible. New York state courts, and particularly the New York Court of Appeals, are protective of the due process of rights of the accused.

Perhaps recognizing that the Supreme Court caselaw setting forth this new due process requirement was not "clearly established," the Court of Appeals seems to have judicially amended AEDPA by holding that the writ may be granted where a state court decision is contrary to a "reasonable extension" of clearly established Supreme Court precedent. *Torres,* 340 F.3d at 72.

Even under the preponderance standard set forth by the Court of Appeals for the Second Circuit, petitioner's claim must fail. In the instant matter, the legitimate basis for petitioner's arrest was satisfactorily established by virtue of the grand jury's return of an indictment against petitioner with respect to that incident—unlike the situation in *Torres,* where the court's factual determinations were apparently made solely on the basis of what the Court of Appeals deemed unreliable hearsay affidavits. *But see Williams v. New York,* 337 U.S. 241, 252 n. 18, 69 S.Ct. 1079, 93 L.Ed. 1337 (not a denial of due process in sentencing to rely on information supplied by witnesses who are not cross-examined or confronted by defendant). This court would ordinarily find further support for the sentencing court's decision in the fact that petitioner, through his testimony at the *Outley* hearing, failed to convince the judge that his arrest was baseless. Reliance on that fact is precluded by *Torres,* however, because petitioner's testimony was apparently unsworn. *See Torres,* 340 F.3d at 72 (holding without explanation that the fact that defendant's testimony at his sentencing was unsworn is a factor in granting of the writ).

Subsequent events show that the sentencing court in the instant case was both

perceptive and prescient. Petitioner eventually pled guilty to the robbery charges that led to his arrest and sentence enhancement.

There is no point in upsetting this conviction for abstract ideological and nondispositive reasons. Though in the shadow of *Torres* it is now a close question, the Appellate Division's denial of petitioner's sentencing claim was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. It was also not contrary to or an unreasonable application of a "reasonable extension" of clearly established federal law as determined by the Supreme Court.

## VIII. Conclusion

The petition for a writ of habeas corpus is denied.

Because the decision of the Court of Appeals for the Second Circuit in *Berbary* leaves the district courts handling habeas cases with some disquietude, perhaps requiring clarification, a certificate of appealability is granted with respect to petitioner's claim that the court's sentencing of petitioner without the benefit of sufficient facts concerning his arrest and termination from the CASES program denied him due process of law.

No certificate of appealability is granted with respect to any of petitioner's remaining claims, petitioner having made no substantial showing of the denial of a constitutional right.

SO ORDERED.