[898 NE2d 553, 869 NYS2d 370]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JONATHAN JENKINS, Appellant.

Argued September 11, 2008; decided October 23, 2008

### POINTS OF COUNSEL

*Office of the Appellate Defender*, New York City (*Margaret E. Knight, Richard M. Greenberg* and *Rosemary Herbert* of counsel), for appellant. Where Jonathan Jenkins had complied with all the terms of his plea agreement, in which he agreed to complete a drug treatment program and meet several other conditions in exchange for dismissal of his case, Mr. Jenkins was entitled to specific performance of the agreement. (*People v Danny G.*, 61 NY2d 169; *Matter of Benjamin S.*, 55 NY2d 116; *United States v Alexander*, 869 F2d 91; *People v McConnell*, 49 NY2d 340; *Spence v Superintendent, Great Meadow Correctional Facility*, 219 F3d 162; *United States v Lawlor*, 168 F3d 633; *Innes v Dalsheim*, 864 F2d 974; *Santobello v New York*, 404 US 257; *Torres v Berbary*, 340 F3d 63; *People v Outley*, 80 NY2d 702.)

Respondent precluded.

### OPINION OF THE COURT

Ciparick, J.

The issue presented by this appeal is whether Supreme Court was compelled to grant defendant specific performance of a plea agreement providing for dismissal of an indictment upon his alleged successful completion of a drug treatment program. We conclude that Supreme Court acted within its discretion in denying dismissal of the indictment.

### I.

Having been arrested in June 1999 and indicted for criminal sale of a controlled substance in the third degree (Penal Law

§ 220.39 [1]) for selling two bags of crack-cocaine to an undercover police officer, in December 1999 defendant pleaded guilty as a second felony offender to a reduced charge of criminal sale of a controlled substance in the fifth degree (Penal Law § 220.31), a class D felony, permitting him to avoid incarceration conditioned upon his satisfying the following obligations as set forth in a written plea agreement: (1) completing a 12-to-18-month residential drug treatment program at Veritas Therapeutic Community, a Drug Treatment Alternative to Prison (DTAP) program, and completing its aftercare or live-out treatment; (2) completing vocational training including obtaining a general equivalency diploma (GED); (3) securing full-time employment and (4) finding "suitable" housing. The plea agreement additionally required defendant to make every court appearance and not be rearrested. Sentencing was initially adjourned until August 2001.

In the event that defendant successfully completed the drug treatment program and otherwise complied with the terms of the plea agreement, the Office of Special Narcotics Prosecutor (OSN) would join in an application to the court to have defendant's case dismissed. If defendant failed to fulfill any of these obligations, the agreement prescribed alternative sentences: $3^{1}/_{2}$ to 7 years' imprisonment if he left the program without authorization or otherwise did not complete treatment and did not voluntarily return to court, and 2 to 4 years' imprisonment if he was not accepted by the program or if he failed the program but voluntarily returned to court. The plea agreement states that the determination of whether defendant violates the terms and conditions of the plea is at the "sole discretion" of OSN and the court.

Defendant began the residential phase of the Veritas program in January 2000, completing it in March 2001. He then began the outpatient phase, living with his girlfriend in New Jersey and attending a relapse-prevention aftercare program. Veritas reported to the court that defendant had obtained employment and opened a savings account. And, in a letter dated October 11, 2001, Veritas reported that defendant had successfully completed all phases of the drug treatment program, but that he had unresolved family issues that would create further problems for him if not addressed. The letter noted that although Veritas attempted to provide the couple with family services, defendant's girlfriend was recalcitrant towards attending counseling sessions.

Defendant filed a *Clayton* motion (CPL 210.40; *see People v Clayton*, 41 AD2d 204, 206-208 [2d Dept 1973]) to dismiss the indictment in the furtherance of justice, alleging that he had complied with the terms of the agreement by completing the Veritas program and committing no new crimes. At a court appearance, on October 12, 2001, the People stated that they would not join in defendant's motion at that time because they had not received documentary proof that defendant successfully completed his GED, obtained full-time employment, opened a bank account and met the other plea conditions. OSN requested a two- or three-week adjournment to provide defendant with ample time to submit the documentation and to allow the People to evaluate defendant's progress and respond to the motion. After a bench conference, defendant withdrew his motion and likewise requested a several-week adjournment.

Supreme Court then read the portion of the Veritas letter to defendant that indicated concerns about his domestic problems. Afterwards, the court requested of defendant that during the adjournment he seek support services for his own benefit to prevent a "relapse." The court additionally said to defendant that he had shown "attitude problems" and "resistance" to timely providing the required documents to demonstrate his completion of the plea conditions. Defendant confirmed his intention to promptly provide the required documentary proof including bank statements and pay stubs. Following a colloquy, the court adjourned the case to November 16, 2001.[1]

On November 2, 2001, defendant's compliance with the plea conditions began to worsen dramatically. He was rearrested in New Jersey for charges involving a domestic violence assault against his girlfriend, which charges were subsequently dismissed. By November 14, 2001, defendant had lost his job and failed to attend treatment consistently. Additionally, defendant continued residing with his girlfriend despite their apparently tumultuous relationship and after having been warned by OSN that residing with her could breach the condition requiring defendant to maintain "suitable" housing.

On February 1, defendant was remanded to custody after a report from Veritas that, since December of the previous year,

---

1. Shortly thereafter, the People informed defendant that they were concerned about his potential for domestic violence as noted in the letter from Veritas, and thus they would not deem his housing "suitable" unless he either discontinued residing with his girlfriend or both of them completed a family counseling program.

defendant was not employed and had failed to attend group and family counseling. On February 5, in open court, defendant signed a written agreement in the presence of his attorney providing him with yet another opportunity to continue with drug treatment instead of being sentenced to incarceration for having violated his plea agreement. Under this second agreement, defendant would attend biweekly counseling services until he obtained full-time employment, continue drug testing and attend one family counseling session per week with his girlfriend. Defendant agreed to the terms, signed the agreement and noted that he was not pressured or forced into doing so.

Defendant, however, soon stopped attending group meetings and failed to maintain contact with Veritas. On April 23, 2002, Veritas terminated him from the program for failing to appear for more than 30 days. Supreme Court then issued a bench warrant for his arrest for failing to make court appearances. On May 28, 2003, after two New Jersey arrests, defendant was involuntarily returned on the warrant. Thereafter, defendant renewed his *Clayton* motion. This time, he claimed that he was entitled to specific performance of his plea agreement as of October 12, 2001 when Veritas had confirmed his completion of the drug treatment program and he had orally asserted that he complied with the other terms. Defendant argued that the problems arose only after he was required to attend more counseling sessions, which he claimed were outside the scope of the plea agreement.

On June 6, 2004, defendant, with newly appointed counsel, withdrew his renewed *Clayton* motion, despite making a lengthy record that he should be granted a dismissal in the furtherance of justice or in the alternative a hearing to determine his compliance with his plea conditions. Defendant stated that he had obtained a GED, acquired vocational training certificates, secured full-time employment and that his housing had been, at some earlier time, approved by OSN. The People maintained that OSN had discretion to require defendant to participate in further support services relating to his unresolved family issues. Prior to sentencing defendant to 3½ to 7 years' incarceration, Supreme Court informed him that the withdrawal of his motion was without prejudice to pursue his claims on appeal.

The Appellate Division, with two Justices dissenting, held that Supreme Court was not obligated to grant defendant specific performance of the plea agreement on October 12, 2001 because defendant had failed to provide proof by that date that

he had completed his plea obligations (44 AD3d 1 [2007]). The court also rejected defendant's claim that the February 2002 agreement constituted a unilateral alteration of the plea agreement by Supreme Court. The dissent asserted that the People breached the plea agreement by refusing to grant defendant the benefit of the bargain, including dismissal of the indictment, because he had met all of his plea obligations and that Supreme Court erred by not dismissing the indictment. A Justice of the Appellate Division granted leave to appeal and we now affirm.

## II.

In deciding a motion to dismiss an indictment in the interest of justice (*see* CPL 210.40, 210.45 [1], [2]), a court must strike a "sensitive balance between the individual and the State" interests to determine whether the ends of justice are served by dismissal of the indictment (*Clayton*, 41 AD2d at 208). Such a value judgment "hinge[s] on the production of facts in the possession of the prosecution and the defendant" (*id.*). Based upon such proffered facts, the court must consider applicable factors under CPL 210.40 "individually and collectively" before concluding that dismissal of the indictment is in the interest of justice (*see People v Berrus*, 1 NY3d 535, 536 [2003]).

Here, the language of the plea agreement itself specifically gave broad discretion to the court and the People to decide whether defendant had complied with it—"Whether the defendant violates the terms and conditions of this agreement is at the sole discretion of OSN and the court." Thus the court and the People were entitled to insist on strict compliance with every term. They had no obligation to overlook what might seem minor deficiencies, or to accept as satisfactory defendant's performance with the treatment program, when Veritas reported that important issues remained unresolved. The judgment as to whether defendant had performed adequately was for the prosecutor and the court to make.

Defendant contends that at the time he filed his initial *Clayton* motion, which he quickly withdrew in Supreme Court on October 12, 2001, he had successfully completed all aspects of his plea agreement. Defendant further asserts that Supreme Court's imposition of a family counseling condition subjected him to a supplemental condition, extraneous to the original plea agreement, that he was forced to accept because the alternative was a possible sentence of incarceration. These claims are meritless.

Under these circumstances, where defendant had failed to provide satisfactory proof that he completed all of the conditions of his agreement, the People were entitled to an adjournment and not required to join in the motion to dismiss. Neither was Supreme Court compelled to "turn a blind eye" and dismiss this case in the furtherance of justice. To be sure, Supreme Court could not pass favorably on defendant's *Clayton* motion without evidentiary support demonstrating that he had complied with the terms of the agreement as CPL 210.40 requires the court to articulate on which factors it relies in dismissing an indictment. Affording the trial court this discretion does not, as the dissent maintains, improperly shift the burden of proof from the People to defendant (*see* dissenting op at 293).[2]

Once defendant violated his plea agreement by being rearrested, the court was "no longer bound by the plea promise and could properly impose an enhanced sentence" (*People v Figgins*, 87 NY2d 840, 841 [1995]). He also failed to comply with the requirement that he maintain "suitable" housing. OSN had informed defendant that he must either discontinue residing with his girlfriend or attend family counseling sessions with her, and he had not done either. Under the plea agreement, OSN had the authority to determine if defendant was maintaining "suitable" housing.

As for defendant's contention that the court could not add additional family counseling, while it is impermissible for a trial court to impose additional conditions on a defendant after pleading guilty (*see People v Avery*, 85 NY2d 503, 507 [1995], citing *People v Farrar*, 52 NY2d 302, 306-307 [1981]), here, no such

---

2. The dissent, moreover, believes that the People erred by failing to join in defendant's *Clayton* motion, and that Supreme Court erred by adjourning the case and by making an insufficient inquiry as to whether defendant complied with all of the terms of the DTAP agreement (*see* dissenting op at 291, 293).

A motion to dismiss an indictment must be in writing and on notice to the People, and the People must be given a chance to respond (*see* CPL 210.45 [1], [2]). Because defense counsel failed to timely file the *Clayton* motion with OSN, OSN received the motion shortly before the October 12th court date—certainly inadequate time to investigate whether defendant had complied with the DTAP agreement's terms. Supreme Court, moreover, did not err in adjourning the case further because the People were entitled to an adjournment to determine whether OSN would join in the motion to dismiss the indictment and because defense counsel in his *Clayton* motion addressed only one of the 10 factors which the court was required to consider before dismissing the indictment in the furtherance of justice (CPL 210.40 [1] [a]-[j]).

additional conditions were imposed. Supreme Court recommended that defendant seek counseling services with his girlfriend to prevent a relapse which, on this record, was well within the discretion afforded the court. Indeed, Supreme Court never stated that defendant's refusal to attend a family counseling program would constitute a violation of the original plea agreement and make him eligible for the alternative jail sentence.

Moreover, the additional agreement that defendant chose to enter into on February 5, 2002 also did not violate defendant's original agreement. By that date, defendant had already breached his plea agreement, thereby making him eligible to be sentenced to 2 to 4 years' incarceration. Instead, the court put forward the proposal by OSN to provide him with yet another opportunity to avoid incarceration by attending additional counseling and finding full-time employment. In view of defendant's breach of the plea agreement, Supreme Court had the discretion to offer defendant this opportunity to obtain counseling services in lieu of sentencing him to jail.

Defendant violated this second agreement, resulting in his discharge from Veritas. Further, he failed to appear at scheduled court dates and bench warranted. Upon his return on the warrant, defendant renewed his *Clayton* motion. Supreme Court at sentencing likewise did not violate defendant's right to specific performance of his plea agreement and would have been justified in denying this renewed motion to dismiss the indictment had it not been withdrawn.

Thus, there has been no showing that Supreme Court abused its discretion while supervising a defendant subject to DTAP in requesting him in October 2001 to attend family counseling to address his unresolved family issues. Furthermore, defendant had not produced documentation as to his compliance with the other terms of the agreement. Neither did Supreme Court abuse its discretion on February 5, 2002 when defendant signed the subsequent agreement. In light of our holding that Supreme Court did not abuse its discretion as a matter of law, we need not reach other issues.

Accordingly, the order of the Appellate Division should be affirmed.

PIGOTT, J. (dissenting). As efficacious as many remedial programs are, particularly those involving drug and alcohol rehabilitation, in my view, they do not relieve the People nor the

court from keeping promises made as part of a bargained-for plea. It is for that reason that I respectfully dissent.

We have long recognized that "[p]lea bargaining is a practice vital to the efficient administration of the criminal justice system, and 'an integral part of the plea bargaining process is the negotiated sentence'" (*People v Avery*, 85 NY2d 503, 506 [1995] [citations omitted]). "Plea and sentence negotiation further important policy considerations, conserving law enforcement, judicial and penal resources, and permitting the parties to avoid the uncertainties inherent in the lengthy process of charge, trial, sentence and appeals, thereby 'starting the offender on the road to possible rehabilitation' as soon as practicable" (*id.*, quoting *People v Selikoff*, 35 NY2d 227, 233 [1974], *cert denied* 419 US 1122 [1975]). In short, it's good for both sides.

It has always been true that if a defendant violates a valid condition of the plea agreement, the court is not bound by the agreed-upon sentence (*People v Figgins*, 87 NY2d 840, 841 [1995]). But it is equally true that the sentencing court must conduct a sufficient inquiry to determine if defendant has indeed violated any condition of the plea (*see People v Outley*, 80 NY2d 702 [1993]); and it is the People who bear the burden of proving that a violation has occurred (*see People v Milligan*, 40 AD3d 1217 [3d Dept 2007]; *see also Torres v Berbary*, 340 F3d 63 [2d Cir 2003]). In the absence of a violation, the failure or inability to fulfill a promise by either the People or the court requires either that the plea of guilty be vacated or the promise fulfilled (*People v Selikoff*, 35 NY2d at 239).

Equally relevant here, a court does not have discretion to unilaterally impose conditions that were not originally agreed upon by the parties or reasonably understood to be part of the agreement (*see Avery*, 85 NY2d at 508; *People v Spina*, 186 AD2d 9, 9-10 [1st Dept 1992]). We have said before that "inasmuch as the State may hold the defendant to the precise terms of the plea agreement as stated on the record, as a matter of fairness, defendant should be entitled to no less" (*People v Danny G.*, 61 NY2d 169, 174 [1984]).

In this case, defendant's plea agreement required him to participate in a residential drug treatment program at Veritas Therapeutic Community (Veritas), a residential 12-to-18-month program devoted to the treatment and prevention of drug abuse and addiction. If defendant successfully completed the program, the Office of Special Narcotics Prosecutor (OSN) would join

defendant's application to dismiss the indictment in the interest of justice. "Successful completion" of the program was defined under the agreement as "completing vocational educational training, obtaining a General Equivalency Diploma, securing full-time employment, and finding suitable housing approved by the Enforcement Team of the Office of Special Narcotics Prosecutor (OSN)." If defendant left the program or otherwise failed to successfully complete the program *as determined by the program*, the court would impose a sentence of 3½ to 7 years. The agreement further required defendant to execute a consent form for the release of confidential information so that the court, his attorney and OSN could be apprised on a monthly basis of his progress in the treatment program. Whether defendant violated the terms and conditions *of the agreement* was "at the sole discretion of OSN and the Court."

Defendant entered Veritas in January 2000, and on a monthly basis thereafter, Veritas sent to OSN, which then forwarded to the court, a progress report on defendant. For instance, after 13½ months of treatment, in February 2001, a letter was sent to OSN from Veritas indicating that defendant was making "immense progress" and had negative toxicology reports. Further, defendant had maintained employment, opened a savings account, and demonstrated "responsibility and determination." On June 13, 2001, a progress report indicated that defendant "completed the residential phase of treatment and began the Live-Out Phase of treatment on March 30, 2001." He completed a "12-week cycle of Relapse Prevention on April 27, 2001," had negative drug tests and attended all scheduled groups. The letter further stated that defendant resided with his family, was employed full time, and continued his vocational training. For over a year and a half, progress reports like these were sent to OSN and the court. Thus, defendant's case was calendared and adjourned in excess of 50 times, evidencing close supervision by OSN and the court and apparent satisfaction with his progress.

On October 4, 2001, following completion of the program, defendant moved to dismiss his case in the interest of justice pursuant to the plea agreement. Neither OSN nor the People opposed defendant's motion, although they did not join in it as required by the plea agreement. A letter to the court, dated October 11, 2001, from a Veritas case manager announced defendant's success and confirmed that he "has completed all phases of drug treatment at Veritas." It further indicated that defendant had regularly attended group and individual sessions and had tested negative for drug use.

The case manager noted one wrinkle, unrelated to the original plea agreement, i.e. that defendant "has unresolved family issues" with his girlfriend "that have created and will eventually create further problems . . . if not addressed." According to the case manager, Veritas had attempted to provide not just defendant but "the couple" with "family services," but defendant's girlfriend had refused to participate. Despite these family problems, defendant still "ha[d] made strides in his recovery and with [the Veritas] program. As of [October 11, 2001] defendant ha[d] completed all phases of drug treatment at Veritas."

Upon the return date of the motion, October 12, 2001, Supreme Court conducted no inquiry and, presumably, made no determination as to whether defendant had, in fact, met all of the conditions of the plea agreement. Significantly, the People made no claim that defendant had not successfully completed the program. Rather, the People requested two to three weeks to respond and sought defendant's cooperation in providing certain documents. The court held an off-the-record discussion at the bench. What exactly was said during this discussion is unknown, but it caused defense counsel to withdraw the motion. What is known is that the parties talked about the "unresolved family issues" identified in the October 11th Veritas letter and that the court adjourned the matter to look into getting defendant "some other support services." Defendant voiced his objection stating, among other things, that he "completed everything there is to complete in this program."

A majority of the Appellate Division and this Court reason that Supreme Court properly exercised its discretion when it postponed the matter to permit defendant to submit proof of his compliance with some of the conditions of the plea agreement. However, my reading of the record, as just indicated, reveals that Supreme Court adjourned the matter for another reason—to investigate the "family issues" separate and apart from any agreement between the court and defendant.

Moreover, it is readily apparent that the People did not contest defendant's claim that he was entitled to have the charges dismissed, let alone establish that he was not, nor did the court make such a finding. Indeed, the People never even argued in Supreme Court, the Appellate Division or to this Court that, as of October 2001, defendant had not complied with the terms and conditions of the plea agreement. Rather, the People have consistently argued that Supreme Court properly exercised its discretion in requiring defendant to participate in further services.

Clearly, it was Supreme Court's duty to make sufficient inquiry, at the time of the motion, as to whether defendant had complied with the terms of the plea agreement. I disagree with the majority that defendant's failure to provide documentation regarding the successful completion of the program excused such inquiry by the court; to so hold improperly shifts the burden of proof from the People to the defendant to prove his compliance with the plea agreement—something we have never done. But even assuming the burden was on the defendant, the facts found in this record seem to support his claim. The court had in its possession monthly progress reports from Veritas, as well as the October 11th letter, indicating that defendant had successfully completed the program: a determination that Veritas was to make under the plea agreement. What remained for the court to determine was whether OSN had approved of his housing and whether defendant had committed any new crimes. The October 11th Veritas letter confirmed that defendant had been residing with his family. OSN never objected to defendant's housing nor his compliance with any of the other terms of the plea agreement during his treatment. Indeed, OSN only objected to his housing on October 23, 2001, two weeks after the return date, and the objection was conditional, i.e. defendant had to find another residence if his girlfriend did not attend treatment meetings.

Further, in my view, while well intentioned, Supreme Court erred in adjourning the matter to determine whether family counseling was needed for defendant, and also erred in imposing family counseling as a condition.

Accordingly, I would reverse and remit the matter to Supreme Court to conduct the appropriate inquiry into whether defendant complied with the terms and conditions of his plea agreement as of October 11, 2001.

Chief Judge KAYE and Judges GRAFFEO, READ, SMITH and JONES concur with Judge CIPARICK; Judge PIGOTT dissents and votes to reverse in a separate opinion.

Order affirmed.