OPINION OF THE COURT
John L. LaMancuso, J.
Whether a defendant who absconds from a treatment court is *1053 entitled to a hearing, pursuant to Torres v Berbary (340 F3d 63 [2d Cir 2003]) and/or People v Outley (80 NY2d 702 [1993]), before being terminated from that court and returned to the trial court for sentencing is the dispositive issue presented herein.
History and Procedural Background
On July 20, 2006, defendant pleaded guilty to one count of burglary in the third degree and one count of attempted burglary in the third degree before Honorable John L. LaMancuso, Acting County Court Judge and Presiding Judge of the City of Jamestown Drug Treatment Court (Jamestown DTC). Sentencing was adjourned for defendant’s participation in the City of Jamestown Drug Treatment Court.
Pursuant to the terms and conditions of defendant’s Drug Court Contract and plea agreement, defendant agreed to the following alternative sentences: (1) upon successful completion of the treatment court program, his case would be returned to Chautauqua County Court for sentencing, and the agreed-upon sentence would be a five-year term of probation; (2) if unsuccessful, the sentence would be a l-to-3-year indeterminate state prison sentence. In addition, the contract provided that “any new arrest . . . while I am in the Drug Court Program . . . can be grounds for immediate termination from the program” (Drug Court Contract ¶ 11) and “I understand and agree that after review and recommendation of the Drug Court Team, the Drug Court Judge alone will determine whether or not I have complied with or failed any of the terms of this agreement” (id. ¶ 12).
On December 5, 2007, defendant was arrested and charged with aggravated harassment in the second degree. He was arraigned the next day and remanded to the Chautauqua County Jail. While incarcerated, he was seen by the Chautauqua County Mental Health Forensic Services Unit and found to be in need of treatment.
After an assessment by the Jamestown Mental Health Court coordinator found defendant eligible to participate in Mental Health Court, the Chautauqua County District Attorney approved his entry into the program, upon condition that he plead guilty to the charge and agree to the following revised plea agreement: (1) if successful, no more jail, a continuation of the original Drug Court plea agreement (i.e., five-year term of probation on the felony conviction), and a reduction of the ag *1054 gravated harassment charge to disorderly conduct; (2) if unsuccessful, a one-year definite sentence on the misdemeanor conviction to be merged into the l-to-3-year indeterminate sentence on the felony conviction.
On January 14, 2008, defendant accepted the People’s offer and pleaded guilty to the charge of aggravated harassment in the second degree. Sentencing was adjourned for defendant to participate in the Jamestown Mental Health Court.
The Mental Health Court Contract provides that defendant will
“keep all appointments for: Court . . . Treatment . . . follow . . . any medical, psychiatric, or substance abuse treatment program assigned by the Court. . . successful graduation will require a minimum of one (1) year of participation in the Mental Health Court program . . . [i]f I fail to complete the Mental Health Court Program, I will return to the Criminal Calendar to be sentenced.”
Unlike the Drug Court Contract, the Mental Health Court Contract does not empower the judge to “alone” determine compliance or failure, after review and recommendation of the Mental Health Court team.
Presaging the tumultuous series of events which were to follow, at his first Mental Health Court appearance in January 2008, defendant’s failure to attend a “care coordination” appointment was noted in the court file.
In February 2008, defendant was fired from his job. On March 17, 2008, defendant was committed to the county jail for failing to attend appointments, failing to perform community service[1] and failing to fill a prescription. On March 24, 2008, defendant admitted, in open court, that he had not taken any of his prescribed mental health medications since entering the program. On that date, defendant was released on his own recognizance and permitted to remain in the program.
On April 21, 2008, a tantalizing, yet ephemeral ray of hope pierced the gloomy veil, when defendant indicated he had found a new job and had a wedding date scheduled for the next month. The sanguine outlook was, however, all too short-lived.
He failed to appear on April 28, 2008, and was not seen or heard from again for 8V2 months. On January 14, 2009, he was *1055 apprehended on the court’s bench warrant, in addition to being charged with resisting arrest and obstructing governmental administration in the second degree for his alleged conduct at the time of the arrest. He was arraigned on the new charges and, on the felony matter, was committed to the Chautauqua County Jail without bail.
On February 17, 2009, upon defense counsel’s motion, the court issued an order for a psychiatric examination pursuant to article 730 of the Criminal Procedure Law. On March 30, 2009, after receiving two psychiatric reports indicating a lack of capacity, the court issued an order of commitment on the felony matter (SCI No. 06-352) and final orders of observation and dismissal of accusatory instruments on the misdemeanor matters. The Mental Health Court team’s recommendation of termination was held in abeyance pending a restoration of competency. Notification of fitness to proceed was received on April 27, 2009, and an order to produce was issued. Defendant appeared from the county jail on May 26, 2009, and defense counsel requested a hearing on the issue of termination.
The team’s recommendation is based upon defendant’s 8V2-month failure to appear and noncompliance with his Mental Health Court Contract and treatment plan. Citing Torres v Berbary (340 F3d 63 [2d Cir 2003]), defendant asserts “[f]actual issues exist as to whether the defendant knowingly or voluntarily acted in ways that should cause a termination from the program” (letter of Robert A. Liebers, Esq., dated June 10, 2009). Citing, inter alia, People v Jenkins (11 NY3d 282 [2008]) and People v Woods (192 Misc 2d 590 [Rochester City Ct 2002]), the People contend that no formal hearing is necessary to terminate a person from a problem-solving/treatment court.
Discussion/Analysis
In May 2009, drug courts around the nation honored National Treatment Court Month by holding events with the theme “Celebrating Twenty Years of Drug Court.”[2] On a national level, Congress, in the 2009 Omnibus Appropriation Bill, authorized $63.9 million for drug courts, representing the largest annual *1056 federal appropriation in the history of drug courts, a 250% increase from the 2008 appropriation.[3]
At the New York State level, the treatment court “movement” has spurred problem-solving courts of manifold permutations, including drug courts, mental health courts, integrated domestic violence courts and youthful offender domestic violence courts, not to mention diversion programs such as the Drug Treatment Alternative to Prison program. As of June 3, 2009, there were 177 drug courts in operation in New York State, with 20 additional mental health courts in the planning stages. According to the New York State Office of Court Drug Treatment Programs, through June 3, 2009, a total of 53,068 individuals have participated in New York State court drug treatment programs and 21,634 have graduated.[3]
[4]
Given the steady growth of problem-solving courts across the nation,[5] as well as the availability of the writ of habeas corpus as a means of obtaining collateral review in the federal courts, it is not surprising that issues of procedural due process, upon the termination of a treatment court participant, have reached a critical mass within the last seven years.
As Judge Pigott’s dissenting opinion in Jenkins explains,
“[i]t has always been true that if a defendant violates a valid condition of the plea agreement, the court is not bound by the agreed-upon sentence . . . [b]ut it is equally true that the sentencing court must conduct a sufficient inquiry to determine if defendant has indeed violated any condition of the plea” (People v Jenkins, 11 NY3d 282, 290 [2008] [citations omitted]).
Whether that inquiry involves a full-blown hearing before a problem-solving court may terminate a participant and before the sentencing court may impose the more severe of the two alternative sentences is a matter touched on by only a handful of cases.
*1057 In Torres, where the petitioner was discharged from a drug treatment program and where the court denied the petitioner’s request for an evidentiary hearing and proceeded to sentence the petitioner to the prison sentence that had been stipulated in the plea agreement in the event the petitioner failed to successfully complete the treatment program, where the court denied the petitioner’s request and accepted as true all statements contained in a letter from the program director to the court and simply allowed the petitioner to make an unsworn statement prior to sentencing, the Second Circuit found that due process had been denied in Torres’ sentencing. Noting that “[d]ue process has clearly been held to require ‘some kind of hearing’ before a person is deprived of a liberty interest” (Torres, 340 F3d at 71), the court stated that “due process in sentencing requires at least a showing by a preponderance of evidence to resolve disputed factual issues” and found that the “preponderance of the evidence” standard was not satisfied by a “single report replete with multiple levels of hearsay and speculation” (id.).
The Second Circuit’s decision in Torres was heavily influenced by the “following elements” (id. at 72):
“total reliance by the trial court on a hearsay report that itself contains only uncorroborated statements of unnamed informants; omission of any finding by the trial court as to the reliability of the informants or as to reasons for the non-disclosure of their identities; failure of the trial court to conduct some kind of hearing, including provision for the examination of Torres under oath; lack of preponderating evidence of Torres’ wrongdoing; and the gross disparity between a sentence that would release Torres to society on a plea to a misdemeanor charge after completion of the Phoenix House program and the four-and-a-half-to-nine-year felony sentence to state prison that he received for violating the original sentence condition” (id.).
While due process does not require a “full blown evidentiary hearing each time a defendant is discharged from a residential treatment program” (People v Joseph, 5 Misc 3d 517, 525 [Sup Ct, Kings County 2004]), “a defendant is entitled to a hearing” (id. at 527). The hearing “does not necessarily require the calling of witnesses or an opportunity for the defendant to cross-examine” (id. at 527). Thus, in Joseph, where the court considered the defendant’s sworn statement, an oral report of *1058 the People based on their interview of the treatment provider staff members and four written reports, where the court applied the Torres factors in a methodical fashion, including the “preponderance of the evidence” standard, the court found that defendant “[had] been afforded a hearing consistent with due process” (id. at 528) and proceeded with sentencing.
In People v Outley (80 NY2d 702 [1993]), the Court of Appeals addressed the due process requirements in cases where defendants are alleged to have violated “no-arrest” conditions of their plea agreements by being arrested before sentencing. The Court held that “[p]roof that defendant actually committed the postplea offense which led to the arrest is not necessary,” and then asked “what lesser showing . . . due process require[s] in order for the court to impose the enhanced sentence” (id. at 713). The court held that the sentencing court “must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation” and the inquiry must be “of sufficient depth ... so that the court can be satisfied — not of defendant’s guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge” (id.).[6]
Whether the Outley “legitimate basis” standard remained viable in the eyes of the federal courts subsequent to Torres’ articulation of a “preponderance of the evidence” standard was a question addressed by Coleman v Rick (281 F Supp 2d 549 [ED NY 2003]). In Coleman, where the petitioner was promised a “one-day split sentence” on condition that he stay out of trouble and complete a “CASES” (Center for Alternative Sentencing and Employment Services) program, where the petitioner was arrested a mere 22 days after the plea taking and indicted by a grand jury for first degree robbery about a week later, where the sentencing court conducted a summary hearing, pursuant to Outley, concluding that the grand jury indictment satisfied the “legitimate basis” standard, the District Court denied the petition for a writ of habeas corpus. Recognizing that the continued viability of Outley “may be thrown into
*1059 some doubt by (Torres]” (Coleman, 281 F Supp 2d at 559), the District Court (Weinstein, J.) nonetheless held that the enhanced sentence was not imposed in violation of petitioner’s right to due process. In light of the fact that the petitioner was indicted, the District Court found that the sentencing court “was assured that there was a legitimate basis for the new charges” (id. at 558) and distinguished Torres, “where the court’s factual determinations were apparently made solely on the basis of what the Court of Appeals deemed unreliable hearsay affidavits” (id. at 560). Holding that “the sentencing court’s actions in the instant case do not violate the federal constitution” (id. at 559), the court noted “the freedom with which state courts are allowed to proceed in sentencing matters . . . measured against the standards set forth by the New York Court of Appeals in its cogent due process analysis in Outley” (id.).
In holding that habeas relief was not available to the petitioner in Janick v Superintendent, Franklin Correctional Facility (404 F Supp 2d 472 [WD NY 2005] [prior to sentencing, the petitioner was arrested and charged with new offenses in violation of the “no arrest” provision of his plea agreement]), despite the trial court’s use of the “legitimate basis” standard, the District Court found that “a reasonable reading of McMillan[7] is that preponderating evidence of disputed factual issues at sentencing is sufficient to comport with due process but is not a necessary condition” (id. at 483). “Without conceding that a preponderance standard is required,” the court noted that “the preponderance . . . standard only requires a factfinder to decide whether a disputed matter is more likely true than not true” (id. at 487), and that the evidence of Janick’s complicity met that standard, despite the trial judge’s failure to make a specific finding. In Janick, where there was no intervening indictment to obviate the need for testimonial evidence, the prosecution “essentially conducted a ‘mini-trial’ of its case against Janick with respect to the charges underlying the new arrest” with “all witnesses [testifying] under oath” (id. at 486).
Where the reason for a treatment team’s recommendation of termination is not a re-arrest or discharge from treatment based on allegations of fact which are contested, a hearing is not necessarily required (see People v Valencia, 3 NY3d 714 [2004] [defendant had entered four different treatment programs, left all four for different reasons, left the last facility without authori *1060 zation and was returned to court on a bench warrant]). In Valencia, the defendant, relying on Torres, argued that when an issue is raised as to an alleged violation of a plea agreement, due process requires an evidentiary hearing and finding by a preponderance of the evidence that the defendant violated the plea agreement before sentencing the defendant to prison. Reasoning that “[h]ere, defendant does not dispute that he committed acts that constituted violations of the plea agreement” (id. at 715), the Court of Appeals held that the sentencing court made a sufficient inquiry to satisfy due process.
In the matter sub judice, defendant’s failure to appear in court and failure to participate in treatment for 8V2 months is undisputed and constitutes a violation of the Mental Health Court Contract and grounds for termination. Undaunted, and bootstrapping from the recent finding of lack of capacity, defendant demands an evidentiary hearing seeking to show that his absence may have been caused by factors beyond his control — by the fact that he may have been depressed, or the fact that he may have been manic or the fact that he may have suffered a psychotic episode. To be eligible for mental health court, a participant must have an Axis I disorder. To afford defendant a hearing on whether he “knowingly or voluntarily acted in ways that should cause a termination from the program” is a Pandora’s box no treatment court dare open.
Treatment courts operate on the principle that there is both a carrot and a stick. The upside of successfully completing the treatment court program is usually a reduced sentence, typically a sentence of probation, along with, in some cases, a dismissal or reduction of the charge; the downside is the enhanced sentence, i.e., incarceration. “Tying a reduced sentence to successful completion of a drug treatment court is favored by the courts . . . [and] is what a drug treatment court is all about” (People v Woods, 192 Misc 2d 590, 592 [2002] [citation omitted]).
The conditions of the Jamestown Mental Health Court Contract were “explicit, objective, accepted by the defendant [and] clearly breached” (id.). Defendant failed to keep all appointments for court and treatment. Also, it is inherently unreasonable for a mental health court participant to bootstrap his defense to a breach of the treatment court contract by using the very reason he is in treatment court to begin with, i.e., his mental health diagnosis. Certainty is what makes problem-solving courts so successful. Affording defendant a full-blown *1061 hearing on whether he “knowingly or voluntarily acted in ways that should cause a termination” would undermine that certainty in ways that would make problem-solving courts less able to achieve their salutary goals.
Competency is an eligibility requirement for all participants. Treatment providers are expected to advise the Jamestown Mental Health Court immediately of any changes in the participant’s competency status, and anyone, including defense counsel, can raise a concern about a participant’s competency at any time, whether the treatment court is in session or not. That a participant may decompensate and require a period of restabilization is axiomatic. But, participation in mental health court is a two-way street. If a participant decompensates, the participant is expected to seek professional help from any of the many resources made available to him or her, including, in Chautauqua County, the Mobile Mental Health Crisis Line, the Mental Health Association, the court coordinator, the court case manager, his defense counsel, the National Alliance for the Mentally 111, his supported or intensive case manager, if any, one of two local hospitals with inpatient mental health services and, last but not least, the treatment provider.
Here, the issue of competency was not raised at all in 2006 or 2007 when defendant was a Drug Court participant, was not raised at all in 2007 when defendant was being considered for Mental Health Court, was not raised at all in 2008, when defendant was still an active participant, and was raised for the first and only time on February 17, 2009. Whether or not defendant’s competency can be reconstructed with any reasonable degree of medical certainty, the established facts belie any claim that defendant was lacking in capacity during the period that he absconded.
The issue in People v Jenkins (11 NY3d 282 [2008]) was whether the sentencing court was compelled to grant defendant specific performance of a plea agreement providing for dismissal of an indictment upon his alleged successful completion of a drug treatment program. The language of the plea agreement gave broad discretion to the court and the People to decide whether the defendant had complied with it. The Court of Appeals held that “the [trial] court and the People were entitled to insist on strict compliance with every term” (Jenkins, 11 NY3d at 287). That factor is not present here. As previously shown, the Drug Court and Mental Health Court Contracts are materially different in one important respect: the omission from the *1062 Mental Health Court Contract of the “judge alone” will determine compliance or failure clause.
Here, the sole basis for the recommended termination is defendant’s failure to make required court appearances and failure to participate in mental health treatment for an 8V2-month period. Defendant does not dispute the fact that he failed to appear and failed to participate in treatment. The only factual dispute is whether defendant “knowingly or voluntarily acted in ways that should cause a termination.” Under these circumstances, pursuant to Valencia, defendant is not entitled to an evidentiary hearing.
Based upon the foregoing, defendant’s request for an evidentiary hearing is denied. In lieu of an evidentiary hearing, and in order to satisfy minimum due process requirements, the court will allow defendant to make an unsworn statement and will consider any written and oral arguments of counsel.

. On March 10, 2008, he received 40 hours of community service as a sanction for noncompliance.

. National Association of Drug Court Professionals, 2009 National Drug Court Month Field Kit, at 2, cached at http://www.nycourts.gov/reporter/ webdocs/2009_NDCM_Field_Kit.pdf.

. Letter by West Huddleston, III, Chief Executive Officer, National Association of Drug Court Professionals, 2009 National Drug Court Month Field Kit, at 2.

. Office of Court Drug Treatment Programs, Project Manager’s Status Report, June 2009, cached at http://www.nycourts.gov/reporter/webdocs/ StatusJune2009.pdf.

. Perhaps contributing to the steady rise in the number of drug courts nationwide are studies concluding that treatment courts significantly reduce crime by as much as 35% in comparison to traditional case dispositions. For a complete listing of the five “meta-analysis” studies, see Drug Court Talking Points (2009 National Drug Court Month Field Kit, at 17 n 14).

. Whether a treatment court must consider due process requirements when terminating a participant to the same extent that a sentencing court must consider due process prior to enhancing a sentence is a latent issue in the instant case. This court takes guidance from the New York State Office of Court Drug Treatment Programs’ Recommended Practices for New York State Adult Drug Treatment Courts § V (F) (4), wherein it is recommended that “drug courtfs] . . . consider legal due process requirements when terminating a participant” (http://www.courts.state.ny.us/courts/ problem_solving/drugcourts/pdfs/RecommendedPractices.pdf, at 46).

7. McMillan v Pennsylvania, 477 US 79 (1986).