■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILSON FELICIANO, Appellant. [957 NYS2d 320]—

The court properly concluded that defendant failed to meet the conditions of his plea agreement (*see generally People v Jenkins*, 11 NY3d 282 [2008]). Over a period of 8½ years, the court gave defendant many opportunities to earn a dismissal of the indictment under the Drug Treatment Alternative to Prison program. Instead, defendant violated the terms of his original plea agreement by relapsing into drug use, absconding from aftercare and having conflicts with the law that included a new drug conviction. Defendant's obligations under the original agreement were clear (*see People v Cataldo*, 39 NY2d 578 [1976]). Defendant's brief successes in drug treatment, followed by relapses, did not satisfy the terms of the agreement.

Defendant did not preserve his contention that the second plea agreement he entered into was a nullity because it contained allegedly unconstitutional postplea conditions, and we decline to review it in the interest of justice. As an alternate holding, we reject this claim on the merits. By the time defendant entered into the second agreement, he had already violated the first one. While these violations made defendant eligible for a sentence of incarceration, the court provided him with another opportunity to avoid a prison term by complying with the

terms of the new agreement. Defendant voluntarily agreed to the second agreement, and then violated its terms as well.

We perceive no basis for dismissing the indictment in the interest of justice. Concur—Tom, J.P., Renwick and DeGrasse, JJ.

Mazzarelli and Catterson, JJ., dissent in a memorandum by Catterson, J., as follows: I must respectfully dissent. The majority affirms the defendant's 2006 felony conviction on the ground that the defendant "violated the terms" of the plea agreement made in connection with his felony arrest in 1997. In my opinion, the facts of this case do not support the majority's conclusion.

As set forth more fully below, the record indicates that the first plea agreement required the defendant to successfully complete "at least" one year of a drug treatment program in order for his indictment to be dismissed. However, three years later, despite defendant's apparent completion of the drug treatment program, the People continued to impose new conditions such as obtaining a GED and securing employment which they explicitly concede were not part of the original plea agreement.

Settled case law prohibits such rewriting of a voluntarily entered-into plea agreement. I would therefore dismiss the indictment.

The defendant was indicted for criminal sale and possession of a controlled substance in the fifth degree after he sold Xanax to an undercover police officer on October 19, 1997. On March 25, 1998, the defendant pleaded guilty to criminal sale of a controlled substance in the fifth degree in full satisfaction of the indictment, and entered into a Drug Treatment Alternative to Prison (DTAP) agreement as part of his plea agreement. The DTAP agreement required that the defendant participate in the H.E.L.P./Project Samaritan drug treatment program for *at least 12 months*, that he not "get into trouble," "violate the rules," or "commit any other crimes," and that he "cooperate with the DTAP program and the court," but it did not set a date for completion. The People agreed that they would dismiss the indictment if the defendant successfully completed the program, and whether "the defendant has successfully completed the [drug treatment] program is within the sole discretion of the prosecutor." The defendant signed the DTAP agreement incorporating the terms of the plea.

Pursuant to a report eight months later on November 4, 1998, the defendant was "compliant with the program rules and regulations." He continued "doing well" in the program as reported on January 13, 1999. At an appearance on June 2,

1999, the defendant told the court that he understood that the case was to have been dismissed in April 1999, which would have marked 12 months in the program. The court informed the defendant that the case would be dismissed when the defendant "completed" the program, but did not inform the defendant as to a date, approximate or otherwise, or any triggering event for completion. The defendant continued doing well in treatment and tested negative for drugs through August 25, 1999.

When he appeared in court on September 22, 1999, after completing 18 months of residential treatment, defense counsel informed the court that the defendant had been discharged from the program for keeping a pocketknife in his locker to open parcels sent by his family, a violation of the facility's rules. However, defense counsel informed the court that the discharge coincided with his discharge from residential treatment for "complet[ing] everything."

The prosecutor, meanwhile, asserted that the defendant was further required to complete "after phase" treatment pursuant to the DTAP agreement. Although, at the time, defense counsel was "not sure" if the agreement with DTAP mandated aftercare, and indeed the record reflects that the agreement does not specify aftercare, he nevertheless informed the court that the defendant had been referred to an outpatient treatment program.

At the defendant's appearance in October 1999, the prosecutor, for the first time, suggested to the court that the defendant seek treatment at a methadone clinic. The defendant agreed, and on December 22, 1999, he began treatment at the methadone clinic in addition to treatment in another program.

At a court appearance on May 10, 2000, more than two years after the original plea agreement was signed, the prosecutor informed the court that the "defendant [was] doing well" and was "compliant with the rules of the program." Defense counsel informed the court that appellant had been in treatment for about 2½ years and was "looking for some closure." Despite noting that the defendant "kept getting bounced around," the court adjourned the case again.

During a status report on September 28, 2000, defense counsel reported that the defendant was doing well at the methadone abstinence clinic. However, the prosecutor, *for the first time,* informed the court and the defendant that the defendant was required to obtain vocational training.

The record, at this point, is devoid of any indication that the defendant had suffered any lapses into substance abuse. Yet, de-

spite the defendant's completion of nearly three years of "successful" residential treatment and aftercare, the court did not dismiss the defendant's case at his January 23, 2001 appearance. Instead, at this point, the prosecutor asked the court to advise the defendant that he was required to obtain a GED. Several months later, the prosecutor advised the defendant that the 1998 DTAP also required him to secure employment. The People concede that these "conditions . . . were not explicit in the original [DTAP] agreement."

The Court of Appeals has emphasized that "certainty in plea negotiations [is] vital to the continued validity of that process." (*People v Danny G.*, 61 NY2d 169, 173 [1984]). Accordingly, "[j]ust as the defendant is bound to the terms of the plea agreement, so is the government, and it may not unilaterally rewrite the agreement to protect its interests." (*United States v Alexander*, 869 F2d 91, 94 [2d Cir 1989]; *see e.g. People v Danny G.*, 61 NY2d at 174.) Moreover, any ambiguity in the plea agreement should be construed in favor of the defendant. (*Spence v Superintendent, Great Meadow Corr. Facility*, 219 F3d 162, 167 [2d Cir 2000]; *Innes v Dalsheim*, 864 F2d 974, 979 [2d Cir 1988], *cert denied* 493 US 809 [1989].)

In *People v Spina* (186 AD2d 9 [1st Dept 1992]), this Court reversed the defendant's conviction after Supreme Court imposed a heightened sentence based upon the defendant's violation of conditions that the court imposed *after* the defendant entered the guilty plea. As we explained: "Although a court may impose a sentence greater than the one originally promised if that sentence is contingent upon compliance with certain conditions and the defendant does not discharge those requirements . . . , the court in the instant situation did not, at the time of the plea, prescribe any rules that defendant had to observe in order to receive probation. Only later did the court decide to make the sentence of probation subject to defendant's adherence to certain conditions . . . [T]his is impermissible." (186 AD2d at 9-10, citing *People v Rodney E.*, 77 NY2d 672 [1991].)

The United State Supreme Court has long made clear that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello v New York*, 404 US 257, 262 [1971]; *accord People v Selikoff*, 35 NY2d 227, 239 [1974], *cert denied* 419 US 1122 [1975].) It is axiomatic that "each party to the voluntarily entered-into plea agreement is entitled to the benefits emanating from the agreement which cannot be retroactively vitiated." (*People v Evans*, 58 NY2d 14, 24 [1982].)

Accordingly, had the People adhered to the terms of the DTAP agreement, the defendant's indictment on the 1997 felony offense would have been quashed by March 2001 when the defendant was arrested a second time for selling Xanax to an undercover police officer. After pleading guilty to a reduced misdemeanor charge, he subsequently signed a second DTAP agreement in February 2002 appertaining to his original plea on the 1997 felony offense. For the next five years, the defendant was alternately incarcerated awaiting program placement or in drug treatment while he attempted to comply with the terms of the second agreement.

The minutes of numerous court appearances and adjournments chronicle the defendant's futile efforts to satisfy the terms of the second agreement, which this time specified that he was required to successfully complete an 18-month drug treatment program, obtain his GED, attend vocational training, secure full-time employment, find suitable housing, and accumulate savings.

Finally, after 8½ years of being, as one judge observed, "enmesh[ed] . . . [in] the bureaucracy," the defendant left the program and refused to go back. Instead, he returned to court, and on September 5, 2006, he was sentenced on the 1997 indictment for failing to meet the conditions of his plea agreement.

In my view, this was error. The court had no authority to impose additional conditions such as securing a GED, vocational training and employment more than two years *after* the original plea agreement was executed. The defendant was not informed at the time of his plea that he would have to comply with these conditions, nor indeed what constituted "successful completion" of DTAP in order to have his indictment dismissed.

He was told only that he had to cooperate with and successfully complete the treatment program without getting into trouble, violating the rules, or committing new crimes. The written plea agreement he signed described successful completion as "regular attendance, compliance with the program rules and regulations, full participation in all activities designated by program staff and negative toxicology reports." There is no indication whatsoever that he did not fulfill these conditions.

On the contrary, as the defendant asserts, the record reflects that he essentially satisfied the requirements of his March 1998 plea agreement before his March 2001 arrest. The defendant had entered a drug treatment program where, for 18 months, he did "well" and tested negative for drugs. Furthermore, although there is no evidence that the DTAP required any additional treatment, the defendant entered an aftercare program

and then a methadone abstinence program where he "did well" and complied with the rules for approximately 18 more months.

Although the People assert that the defendant broke one of the inpatient program rules by bringing in a pocketknife, they do not dispute that the incident coincided with his completion of the drug treatment program. Indeed at the defendant's September 22, 1999 appearance, rather than requesting that the defendant be remanded for violating the DTAP agreement or return to residential treatment, the prosecutor recommended that the defendant proceed to the aftercare phase of treatment. The court permitted the defendant to leave the program and enroll in an aftercare program where he remained in treatment and again "did well." Subsequently, at the prosecution's recommendation, the defendant sought treatment at a methadone clinic. By June 2000, "the only other thing" that the prosecutor sought was to have the defendant completely "off of" methadone, which the People do not dispute he accomplished "in early 2001."

Under these circumstances, I would find that the defendant is entitled to specific performance of his original plea agreement and that the indictment should be dismissed. (*See People v McConnell*, 49 NY2d 340, 348 [1980]; *see also People v Danny G.*, 61 NY2d at 175.)