People v Boissard (2022 NY Slip Op 05042)

People v Boissard

2022 NY Slip Op 05042

Decided on August 24, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 24, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
ANGELA G. IANNACCI
PAUL WOOTEN
JOSEPH A. ZAYAS, JJ.

2019-05456 
2020-01369

[*1]The People of the State of New York, respondent,
v
Christopher Boissard, appellant. (Ind. Nos. 1121/17, 1646/17)

Patricia Pazner, New York, NY (David Fitzmaurice of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Denise Pavlides, and Terrence F. Heller of counsel), for respondent.

DECISION & ORDER
Appeals by the defendant from two judgments of the Supreme Court, Kings County (Joseph Gubbay, J.), both rendered April 23, 2019, convicting him of criminal contempt in the first degree under Indictment No. 1646/17, and sexual abuse in the first degree and forcible touching under Indictment No. 1121/17, upon his pleas of guilty, and imposing sentence. The appeals bring up for review two orders of protection issued at the time of sentencing.
ORDERED that upon the appeals from the judgments, so much of the orders of protection as directed that they remain in effect until April 22, 2028, are vacated, on the law and as a matter of discretion in the interest of justice, and the matter is remitted to the Supreme Court, Kings County, for a new determination of the duration of the orders of protection in accordance herewith; and it is further,
ORDERED that the judgments are affirmed.
The defendant in these cases is deaf and mute, and communicates through sign language. He was charged with various crimes in two indictments. Under Indictment No. 1646/17, he was charged with four counts each of aggravated family offense, criminal contempt in the first degree, and criminal contempt in the second degree. The charges stemmed from an incident in which the defendant went to the place where his father worked, in violation of several active orders of protection.
Under Indictment No. 1121/17, the defendant was charged with, among other offenses, sexual abuse in the first and third degrees, forcible touching, criminal possession of a weapon in the third and fourth degrees, and criminal contempt in the first and second degrees. These charges arose from a series of incidents that occurred in late January and early February 2017. Specifically, on January 23, 2017, the defendant approached the complainant (a stranger) from behind, "slammed her against a wall," and groped her breasts. The complainant called 911. When the defendant was arrested shortly thereafter, the police found two switchblade knives in his pockets. The defendant was arraigned the following day. Four days later, the complainant noticed the defendant walking on the opposite side of the street. The defendant made eye contact with the [*2]complainant; he then ran toward her, stopped, and stared at her. The complainant called 911, but, by the time the police arrived, the defendant was gone. A few days later, on February 3, 2017, the defendant screamed at the complainant and "gyrate[d] his hips" from in front of her apartment building. The next day, the complainant observed the defendant pacing outside of her apartment building for about two hours.
In August 2017, the parties agreed to a resolution of both matters. To resolve the groping case, the defendant would enter a plea of guilty to sexual abuse in the first degree and forcible touching. A week later, he would enter a residential alcoholism treatment program in Rochester, which he would attend for five or six weeks. Upon completion of that program, he would move to a different program, in Atlanta, Georgia, where he would receive additional treatment for at least one year. If the defendant successfully completed these programs, he would be permitted to withdraw his plea of guilty to sexual abuse in the first degree, and he would be sentenced to a conditional discharge on the forcible touching conviction. If, on the other hand, the defendant did not successfully complete the treatment programs, he would be sentenced to a determinate term of four years of imprisonment, to be followed by a period of postrelease supervision of seven years.
With respect to the other indictment, the agreement provided that the defendant would enter of a plea of guilty to criminal contempt in the first degree. If he successfully completed the treatment programs, he would be sentenced to a three-year conditional discharge, and the People would consider modification of the order of protection so that the defendant could have contact with his father. If the defendant was not successful, the alternative sentence would be 1½ to 3 years of imprisonment, to run concurrently with the four-year sentence that would be imposed if the defendant's plea of guilty to sexual abuse in the first degree was not vacated, and the full order of protection in his father's favor would remain in place.
In May 2018, while at the treatment program in Atlanta, the defendant relapsed and was expelled from the program. The Supreme Court gave the defendant the opportunity to return to the treatment program in Rochester and "restart[ed] the year of treatment" required under the conditional plea agreement. The defendant received positive progress reports from that program through the fall and was transferred to a different program in November 2018.
In December 2018, that program reported that the defendant was having a number of behavioral issues, including limited engagement in group sessions, conflicts with other clients, and angry outbursts. It was ultimately determined that the defendant "[would] not be discharg[ed] successfully" from the program. Among other concerns, the program reported that the defendant was "show[ing] very little improvement in terms of participation," that he did not believe he had a drug or alcohol problem, and that he had tested positive for alcohol use.
The defendant thereafter moved, in effect, for specific performance of the conditional plea agreement, or, alternatively, dismissal of the sexual abuse in the first degree count in the interest of justice (see CPL 210.40; People v Clayton, 41 AD2d 204). The defendant contended that this relief was warranted given "the compelling and unique circumstances" of the case, and the fact that, in his view, he had substantially complied with the treatment mandate. The defendant emphasized that he had spent more than a year at in-patient alcoholism treatment programs, and thus, had "essentially abided by his promise." The defendant, moreover, attributed his expulsion from the final program that he had attended to its "discover[y] that [he] had pled guilty to a sex offense," and its unwillingness to have individuals with such a criminal background reside there, given that the facility also housed a daycare center. The defendant contended that this, rather than his supposedly lackluster performance in treatment, was the real reason he had been discharged from the program. The defendant noted as well that, despite extensive efforts by the Brooklyn Treatment Court to find another program for him to attend, no program that could accommodate his unique needs had been identified.
The defendant was sentenced on April 23, 2019. At that time, the Supreme Court issued a written decision on the defendant's motion. The court denied the defendant's motion to [*3]dismiss, and also declined to sentence him as if he had successfully completed the treatment mandate. The court noted, initially, that the defendant "[had] not successfully complete[d] the court mandates as set forth at the time of the plea." The court then addressed each of the Clayton factors, placing particular emphasis on the fact that the conduct underlying the sexual abuse charge was "very serious," that the complainant was reportedly still "in a constant state of fear and anxiety," that the defendant had a lengthy criminal history, and that it "share[d] the People's concern" that dismissal would have a deleterious effect on public safety.
The Supreme Court addressed the defendant at sentencing. The court stated that, although the defendant's "behavior wasn't perfect" at the final program, and he had relapsed, it did not seem to the court that those issues amounted to "terminable offense[s]." In other words, the court did not believe that there had been "a legitimate basis" to expel the defendant from the program, and that he had, in fact, been discharged because of his conviction of a sex offense. For that reason, the court was willing to give the defendant the opportunity to withdraw his plea of guilty to sexual abuse in the first degree. The defendant, however, did not wish to avail himself of that opportunity.
The Supreme Court then explained that, although the People were objecting "vociferously," it needed to do what it believed to "be fair and right" and "proportional." That meant, in this case, sentencing the defendant to an aggregate term of one year in jail, which time he had already served. Final orders of protection were issued in favor of the defendant's father and the complainant in the sexual abuse case. They were set to expire nine years from the date of sentencing. The defendant appeals.
"[I]n most instances when a guilty plea has been induced by an unfulfilled promise either the plea must be vacated or the promise honored, but that the choice rests in the discretion of the sentencing court" (People v McConnell, 49 NY2d 340, 346). In this case, the Supreme Court providently exercised its discretion in determining that, although the defendant spent more than a year in residential substance abuse treatment programs, specific performance of the conditional plea agreement was not warranted. Although the court did not believe that the defendant's alcohol relapse and other reported problems at the final treatment program he attended were the real reason for his discharge, those issues nevertheless suggested that the defendant's alcoholism, which played a role in his commission of the instant offenses, remained an unresolved concern.
Moreover, the manner in which this case was ultimately resolved essentially split the difference between what was promised if the defendant was successful in treatment, and the sentence the Supreme Court could have imposed if he was not. Although the defendant's conviction of sexual abuse in the first degree was not vacated, he was effectively sentenced to time served, instead of four years in prison. In addition, the alternative sentence that was contemplated at the time of the defendant's pleas of guilty included seven years of postrelease supervision. Because the court sentenced the defendant to definite terms of imprisonment, however, he avoided being subject to postrelease supervision (see People v Harris, 72 AD3d 1110, 1114).
For many of the same reasons, the Supreme Court's denial of the defendant's Clayton motion was also a provident exercise of discretion. "CPL 210.40 authorizes the court to dismiss an indictment or any count thereof in furtherance of justice, as a matter of judicial discretion, when, after considering certain enumerated factors, the court finds the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such indictment or count would constitute or result in injustice" (People v Burke, 174 AD3d 915, 916 [internal quotation marks omitted]). Resolution of a Clayton motion requires "strik[ing] a sensitive balance between the individual and the State interests to determine whether the ends of justice are served by dismissal" (People v Jenkins, 11 NY3d 282, 287 [internal quotation marks omitted]).
As the Supreme Court correctly recognized, the defendant's commission of crimes against the complainant, and the stalking and harassment incidents that followed it, were very serious offenses (see CPL 210.40[1][a]). In addition, the harm to the complainant that the defendant's [*4]behavior caused, in terms of the anxiety and distress she continued to experience when doing everyday things like walking around her neighborhood, was unquestionably significant (see id. § 210.40[1][b]). Moreover, as mentioned above, the defendant's inability to complete the mandated treatment heightened the concern that he could re-offend in the future (see id. § 210.40[1][h]).
In addition, the sentence imposed by the Supreme Court effectively alleviated the concerns raised in the defendant's motion that the New York State prison system was ill-equipped to address the needs of deaf inmates. Thus, the court appropriately balanced the competing concerns of the defendant and the People and resolved this matter in a fair and just way.
The defendant's challenge to the geographic scope of the orders of protection has been rendered academic by the Supreme Court's amendment of those orders. However, as the People concede, the duration of the orders of protection should have been eight years, instead of nine (see CPL 530.12[5]; 530.13[4]). Therefore, the matter is remitted to the Supreme Court, Kings County, to amend the duration of the orders in accordance herewith (see People v Chambers, 177 AD3d 645, 646-647; People v Ramos, 164 AD3d 922, 924).
BRATHWAITE NELSON, J.P., IANNACCI, WOOTEN and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court